IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAIʻI

| | |
|---|---|
| CHARMAYNE PULE., *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>BOBBY L. MACOMBER, *et al.*,<br><br>Defendants. | Case No. 17-cv-00193-DKW-KJM<br><br>**ORDER (1) LIFTING STAY AND (2) DIRECTING BRIEFING** |

On January 24, 2018, the Court *sua sponte* stayed this case in order for the parties to conduct a settlement conference with the assigned Magistrate Judge. Such settlement discussions have intermittently continued with the Magistrate Judge since that time. *See e.g.* Dkt. Nos. 66, 69, 71.

On June 18, 2021, for the first time, one of the parties, Plaintiffs, moved to lift the stay, claiming that their constitutional and legal rights had been violated by the length of the stay. Among other things, Plaintiffs assert that, after numerous settlement conferences, no settlement has been reached, the parties' positions are unchanged, and further settlement will not resolve this case. In response, Defendants argue that the stay should remain in place because allegations in this case are the same as those in another case, which the Court will describe as the "*Andrade*" case, currently before the Ninth Circuit Court of Appeals. Defendants

also move for the stay to remain in place pending the appeal of the *Andrade* case and move to strike statements in Plaintiffs' motion to lift the stay.

In light of the lack of success in the settlement conferences between the parties, the Court does not disagree that lifting the stay is the appropriate course of action. The stay was imposed to facilitate settlement discussions and, if that process has now run its course, the Court does not see how any issues here may be simplified through settlement. *See Lockyer v. Mirant Corp.*, 398 F.3d 1098, 1109 (9th Cir. 2005) (explaining that one of the interests to be weighed in considering whether to stay a case is whether issues will be simplified).

In so concluding, the Court also addresses some of the unwarranted arguments advanced by the parties. First, and most important, the Court strongly disagrees with Plaintiffs' argument that their rights have been violated by the stay. Specifically, Plaintiffs' apparent contention that the Court is to blame for the length of the stay.[1] As mentioned, the stay was imposed for the parties to conduct settlement negotiations in a case that, from this Court's perspective, was ripe for

---

[1] Plaintiffs assert that "[t]here was no activity in the case whatsoever from July 3, 2019 until April 29, 2021, a period of one year and nine months." Dkt. No. 75 at 4. Plaintiffs do so apparently because they believe the Court is unilaterally to blame for such inactivity−a preposterous proposition. While the Court has the power to control the disposition of cases on its docket, it is undoubtedly up to the parties, in particular Plaintiffs, to move their own cases along to conclusion. The Court, with a large number of other civil, as well as criminal, cases to manage, cannot be expected to micro-manage every single one of the cases on its docket to ensure that each and every party is happy with the progress of their case. Rather, it is up to the parties to ensure progress and, when they are unhappy with the same, to apprise the Court and propose solutions, things that never happened in this case.

settlement. While *the Court*, thus, imposed the stay, it was up to *the parties* to conduct the required settlement conference and gauge the possibility of settlement from their own perspectives. As far as this Court was aware, that process remained ongoing until relatively recently. In other words, at no point−from when the stay was imposed until the filing of the instant motion to lift stay−was this Court ever apprised of the alleged intransigence of the parties or the alleged futility of further settlement conferences. In fact, the parties complete silence on such topics suggested precisely the opposite: that good may come from further settlement efforts and, thus, a continued stay. Put simply, if Plaintiffs believed their rights were being violated by the stay in this case, it was incumbent upon them to notify the Court of the same. They did not do so and, thus, the Court rejects any such argument.

Second, the Court rejects Defendants' argument that the appeal of the *Andrade* case will measurably benefit issues in this case, at least to the extent that any such benefit justifies a further stay. While Defendants' argue that allegations in the *Andrade* case are the same as the allegations here, they ignore the fact that, *in toto*, the allegations and claims here are far broader than those in *Andrade*. Succinctly, the *Andrade* case involves three claims, all under federal law, that certain current and former defendants in this case conspired or acted jointly in depriving an individual, affiliated with (but not one of) the instant Plaintiffs, of her constitutional rights. Here, while the Third Amended Complaint (TAC) contains

one federal claim of similar ilk to one of the claims in *Andrade*, *all* other claims in the TAC or the counter-complaint are different from anything asserted in *Andrade*. As more fully discussed below, all of those remaining claims concern alleged state law violations concerning the use and property of Kahikolu Church. Nothing from the appeal of the *Andrade* case will provide guidance as to those claims. Therefore, the Court DENIES the countermotion, Dkt. No. 77, to the extent that it seeks a stay of this case pending an appeal of *Andrade*.[2]

      Third, the Court also DENIES Defendants' motion to strike statements in the motion to lift the stay, Dkt. No. 77. In one brief paragraph, Defendants assert that "[u]nsupported conclusory and inflammatory statements" in the motion to lift the stay should be stricken. *Id*. at 11. At no point, however, do Defendants identify, with any specificity, the statements they wish to have stricken. Instead, they describe the statements as generally concerning the use of the Kahikolu Church grounds. *See id*. The Court will not attempt to determine what statements Defendants specifically want stricken or why those statements run afoul of any pertinent rules – work that Defendants should have done as part of their motion to strike.

---

[2] The Court also rejects Defendants' unexplained contention that having to litigate this case and the appeal of *Andrade* will somehow prove "much more expensive and burdensome…." Dkt. No. 77 at 12. Instead, the matters with which they complain−separate judges, rules, and deadlines−are simply incidences of litigation, not burdens.

Finally, while the Court will lift the stay in this case, *before* any further discovery, motion practice, or litigation of any type may proceed, all parties are directed to address the following questions, for which the Court provides a brief background.

As the Court has stated in an earlier Order, this lawsuit arises out of a dispute over the election of officers and a minister at Kahikolu Church in 2013. 1/2/18 Order at 2, Dkt. No. 47. Plaintiffs assert that the "crux of this case is the control of the Kahikolu Church." Dkt. No. 75 at 8. Defendants, for their part, have argued that the "real underlying dispute herein is that the Plaintiffs primarily disapprove of [Defendant Bobby L.] Macomber for religious affiliation reasons." Dkt. No. 22-1 at 4. On their face, such matters may seem misplaced in federal court. However, this case also raises one matter of federal concern: an alleged violation of 42 U.S.C. Section 1983. Specifically, Plaintiffs allege that Defendants have conspired with state officers to deprive Plaintiffs of their federal constitutional rights. Whether accurate or not, that claim undoubtedly may be brought in federal court. What then of the matters concerning the election of officers and a minister at Kahikolu Church?

Ordinarily, absent circumstances not present here, a claim under state law, such as all but one of the claims in this case (including Defendants' counterclaims), cannot be brought in federal court. However, when a federal court has jurisdiction over at least one claim, the court also has "supplemental jurisdiction" "over all other

claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy…." 28 U.S.C. § 1367(a).   The parties are, therefore, directed to answer whether each of the state law claims in this case are "so related" to the federal claim under Section 1983 "that they form part of the same case or controversy…" for purposes of supplemental jurisdiction.   In doing so, the parties should observe that state law claims are part of the same case or controversy when they "derive from a common nucleus of operative fact[]" such that a party would "ordinarily be expected to try them all in one judicial proceeding…." *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 725 (1966); *see also Bernhardt v. Cty. of Los Angeles*, 279 F.3d 862, 868 (9th Cir. 2002) (explaining that federal courts are required to examine jurisdictional issues *sua sponte*).

Next, assuming that supplemental jurisdiction exists over each of the state law claims in this case, federal law also provides that a district court may decline to exercise supplemental jurisdiction over such claims under certain circumstances. 28 U.S.C. § 1367(c).   As pertinent here, those circumstances include: (1) if the claims raise a novel or complex issue of state law; (2) if the claims substantially predominate over the federal claim or claims; and (3) if, "in exceptional circumstances, there are compelling reasons for declining jurisdiction."   *Id*. at § 1367(c)(1)-(2), (4).   The parties are, therefore, directed to answer whether, assuming the existence of supplemental jurisdiction over each of the state law claims

in this case, this Court should decline to exercise such jurisdiction because (1) the state law claims raise a novel or complex issue of state law; (2) the claims substantially predominate over Plaintiffs' Section 1983 claim; <u>or</u> (3) exceptional circumstances compel that jurisdiction be declined.  In doing so, the parties should observe that a district court's discretion to decline or retain supplemental jurisdiction is "informed" by the "values of economy, convenience, fairness, and comity." *Acri v. Varian Assocs., Inc.*, 114 F.3d 999, 1001 (9th Cir. 1997) (quotation omitted).  In addition, the parties should bear in mind their prior statements regarding the "crux" or "real underlying dispute" of this case.

## **CONCLUSION**

For the reasons set forth herein, Plaintiffs' motion to lift stay, Dkt. No. 75, is GRANTED solely to the extent set forth herein.  Defendants' countermotion to limit the stay and motion to strike, Dkt. No. 77, are DENIED.

The parties are directed to answer the following questions:

(1) whether each of the state law claims in this case are "so related" to the federal claim under Section 1983 "that they form part of the same case or controversy…" for purposes of supplemental jurisdiction; and

(2) whether, assuming the existence of supplemental jurisdiction over each of the state law claims in this case, this Court should decline to exercise such jurisdiction because (A) the state law claims raise a novel or complex issue

of state law; (B) the claims substantially predominate over Plaintiffs' Section 1983 claim; <u>or</u> (C) exceptional circumstances compel that jurisdiction be declined.

The parties' simultaneous submissions, limited to fifteen (15) pages, are due no later than August 13, 2021. After the Court's ruling on the foregoing questions, the parties may contact the assigned Magistrate Judge for purposes of establishing a new scheduling order for this case.

IT IS SO ORDERED.

Dated: July 27, 2021 at Honolulu, Hawai'i.



Derrick K. Watson
United States District Judge

---

*Charmayne Pule, et al v. Bobby L. Macomber, et al*; Civil No. 17-00193 DKW-KJM; **ORDER (1) LIFTING STAY AND (2) DIRECTING BRIEFING**